UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXANDER CARABALLO, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 07-cv-2807 |
| v. ) | |
| ) | Judge John W. Darrah |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David L. Jamison has filed for summary judgment, arguing that

Defendant City of Chicago failed to properly pay Jamison, and other paramedics, one and one-

half times his regular rate of pay for all hours worked over forty hours in a week, in violation of

the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"). The City has cross-filed

for partial summary judgment, arguing that the City complied with the FLSA in the methodology

it used to calculate paramedics' overtime compensation and that the City did not engage in any

willful conduct to violate the FLSA.

## PROCEDURAL HISTORY

Pending before this Court are the following FLSA lawsuits filed on behalf of Emergency

Medical Services paramedics employed by the City of Chicago Fire Department: *Alvarez v.*

*Chicago*, 06-cv-4639; *Caraballo v. Chicago*, 07-cv-2807; *Baley v. Chicago*, 09-cv-228; and

*Canby v. Chicago*, 12-cv-669. Jamison is a named Plaintiff in the *Caraballo* action, and his

claim contains examples of all of the FLSA pay issues disputed in the above cases. Because the

procedural history of this matter is long and complicated, a brief summary is necessary for

context.

Judge Hibbler originally presided over this matter, *Caraballo v. Chicago*, 07-cv-2807, which was consolidated with another case, *Alvarez, et al. v. City of Chicago*, 06-cv-4639. On March 18, 2009, after extensive discovery, Judge Hibbler granted the City's motion for summary judgment against both the Alvarez and Caraballo Plaintiffs because their claims were heterogeneous. *Caraballo, et al. v. City of Chicago*, Nos. 06-cv-4639, 07-cv-2807, 2009 WL 743315, at *6 (N.D. Ill. Mar. 18, 2009). Judge Hibbler dismissed the collective action Complaints without prejudice to allow Plaintiffs to pursue their collective overtime pay claims through the arbitration provision contained in the collective bargaining agreement (the "CBA") entered into between Plaintiffs and the City. *Id.*

On July 7, 2009, this Court granted summary judgment in favor of the City in another FLSA matter, *Baley v. Chicago*, No. 09-cv-228, 2009 WL 1953132 (N.D. Ill. July 07, 2009), holding that there was no factual dispute that Plaintiffs were heterogeneous and that their claims could not proceed as a collective action. On October 29, 2009, the judgment was clarified to hold that Plaintiffs' claims were dismissed without prejudice with leave to file individual claims.

Subsequently, in *Alvarez v. City of Chicago*, 605 F.3d 445 (7th Cir. 2010), the Seventh Circuit reversed the district court's dismissal of the named Plaintiffs' claims and remanded for proceedings consistent with its opinion. *Id.* at 451. The Seventh Circuit also entered an order, vacating the summary judgment opinion in *Baley v. Chicago*, 09-cv-228, and remanded the case for proceedings consistent with its opinion in *Alvarez*. *See Baley v. Chicago*, No. 09-cv-228, 2011 WL 2214673 (N.D. Ill. Jun. 02, 2011). After remand, on November 11, 2011, Judge Hibbler ordered that the consolidated cases, *Caraballo* and *Alvarez*, would proceed with Plaintiff Jamison as the representative plaintiff. (Dkt. # 156.) In April 2012, *Caraballo* and *Alvarez*, as

well as another FLSA case, *Canby v. Chicago*, 12-cv-669, were reassigned to this Court, to be

decided along with *Baley v. Chicago*, 09-cv-228.

## BACKGROUND

The facts regarding the City's timekeeping procedures and how it pays its paramedics are

generally not in dispute.  (*See* generally Def.'s Responses to Plaintiff's Local Rule 56.1(a)(3)

Statement of Undisputed Material Facts ("Def. Resp. to SOF").)  The City's current

compensation structure for its paramedics is derived, in part, from prior litigation.  Prior to 1995,

the City compensated both its firefighters and paramedics under the FLSA's Section 207(k)

limited overtime exemption for public sector employees who engage in fire protection activities

and law enforcement.  The applicable CBA that covered both the City's firefighters and

paramedics contained a compensation structure, including overtime premiums, based on a fire

platoon schedule.  (Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts

¶ 4 ("Def. SOF").)  However, in *Alex, et al. v. City of Chicago*, 29 F.3d 1235 (7th Cir. 1994), the

Seventh Circuit held that the Section 207(k) did not apply to paramedics and that, consequently,

the City was obligated to compensate its paramedics FLSA overtime pay for hours worked in

excess of forty in a seven-day workweek.

Following the Seventh Circuit's decision in *Alex*, the City and the paramedics' union

participated in multiple negotiations of the CBA regarding the paramedics' pay structure.  (Pl.'s

Resp. Br. at 1.)[1]  The City adjusted the paramedics' schedule to a "paramedic platoon schedule,"

which is 24 hours on-duty followed by 72 hours off-duty.  This schedule is a seven-day

---

[1] Plaintiffs have been and are members of the Chicago Firefighters Union and have been
subject to the CBA between the Chicago Firefighters Union, Local No. 2 and the City of Chicago
(dated July 1, 2003 through June 30, 2007, and July 1, 2007 through June 30, 2012).  (Def. SOF
¶ 4.)

workweek that includes either one or two 24-hour shifts.  (Def. SOF ¶ 5.)  Paramedics typically

work a scheduled shift rotation of three, 48-hour weeks, followed by one, 24-hour week.

(Plaintiff's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts ("SOF") ¶¶ 7-8.)  The

CBA includes the following provisions regarding hours of work:

> The normal on duty tours of duty shall be twenty-four (24) consecutive hours on duty . . . followed by seventy-two (72) consecutive hours off duty . . . The normal weekly work period shall be the seven (7) days from Sunday through Saturday. . .

> Employees authorized to work any time on duty in addition to the normal shifts as defined in this Article shall be considered as working overtime hours, subject to the overtime rate provision of this Agreement.

(Def. SOF ¶ 7 and Exs. 4 and 5 at §§ 4.1-4.5).

All paramedics receive an annual salary, which is paid in twenty-four equal payments and

issued twice a month.  (Def.'s Resp. to SOF ¶ 16; *see also* Def.  SOF ¶ 8.)   For their regularly

scheduled shifts of 48-hour weeks, paramedics receive additional payment for the extra eight

hours worked over forty at a rate of half (50 percent) their straight-time hourly rate.  (Def.'s

Resp. to Pl. SOF, Exh. 7.)  If paramedics work overtime outside of their regularly scheduled

shifts, according to the CBA, they receive pay at the rate of one and a half (150 percent) times

their straight-time hourly rate of time, regardless of whether that regular schedule was a 24-hour

or a 48-hour week.  (SOF ¶¶ 17, 37; Def. SOF ¶ 8.)[2]

Pursuant to the CBA, the City makes certain, additional payments that are not calculated

into the paramedics' regular rate for purposes of determining overtime pay.  Two of these

payments are automatic:  "Duty Availability Pay" and "Uniform Pay" (an allowance for

uniforms that was paid only until March 1, 2007, as specified in the CBA).  (SOF ¶¶ 27-29.)

---

[2] For example, when paramedics are scheduled to work one 24-hour shift in a week but work additional shifts in that workweek, paramedics receive contract overtime payments for the time over twenty-four hours even if they do not work forty hours in the week.  (SOF ¶ 37.)

The other payments are conditional and therefore paid to paramedics fulfilling certain conditions: (1) "Acting Pay," paid for performing the work of a higher ranking and higher paid position (SOF ¶ 19); (2) "Driving Pay," paid for performing duties related to driving ambulances (SOF ¶ 21); (3) "Fitness Pay," paid for passing an annual physical fitness test (SOF ¶ 23); (4) "Specialty Pay," paid to paramedics certified as divers or hazardous materials technicians (SOF ¶ 25); and (5) "Continuing Education Pay," paid for paramedics attending continuing education classes outside of their regularly scheduled shifts (SOF ¶ 18).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

The parties' Cross-Motions for Summary Judgment present the following issues: (1) whether the City should have included additional payments made to the paramedics when calculating their regular rate for purposes of overtime under the FLSA; (2) whether the City properly used the "fluctuating work week" methodology for calculating the paramedics' hourly rate under the FLSA; (3) whether the City is entitled to overtime credits to offset any FLSA liability; (4) whether the City properly included certain continuing education hours as hours worked for purposes of calculating overtime compensation; and (5) whether the City acted willfully to violate the FLSA. Each of these issues is addressed in turn.

*The Exclusion of Certain Payments in Calculating the Paramedics' Regular Rate*

Under the FLSA, a nonexempt employee who works more than forty hours in a given week must be compensated for those excess hours. 29 U.S.C. § 207(a)(1). An employee's overtime rate is calculated based on his "regular rate" at which he is employed.[3] The FLSA defines the "regular rate" to "include all remuneration for employment paid to, or on behalf of, the employee," subject to certain exclusions. 29 U.S.C. § 207(e). In the case where an employee

_____

[3] The FLSA generally requires that employees be paid overtime "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). However, as discussed in more detail below, the FLSA also permits, in certain circumstances, the calculation of overtime at the rate of 50 percent of the regular rate where employees are paid according to the "fluctuating workweek" method.

receives an annual salary, his regular rate for these purposes is computed by dividing the "total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

Section 207(e) of the FLSA identifies seven statutory exclusionary clauses to the regular rate, including the following exclusionary clause relevant to this matter:

> (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and *other similar payments to an employee which are not made as compensation for his hours of employment*.

29 U.S.C. § 207(e) (emphasis added). Courts have held that Section 207(e)'s exceptions "are to be interpreted narrowly against the employer, and the employer bears the burden of showing that an exception applies." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) (internal citations omitted); *see also Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000) ("The burden is on the employer to establish that the remuneration in question falls under an exemption."); *see also Acton v. City of Columbia*, 436 F.3d 969, 976 (8th Cir. 2006) (same); *Shaw v. Prentice Hall Computer Publ'g*, 151 F.3d 640, 642 (7th Cir. 1998) (holding, in the context of whether an employee fell under the FLSA's protections, that employer bears the burden of proving that employee was exempt).

The Department of Labor ("DOL") has published an interpretative bulletin regarding FLSA's overtime requirements and Section 207(e)'s exceptions, found at 29 C.F.R. § 778 *et seq*. Although interpretative regulations do not have the force of binding law, courts may rely on them as "persuasive evidence both of Congress's legislative and the Secretary [of Labor]'s

regulatory intent." *Howard v. City of Springfield*, 274 F.3d 1141, 1146 (7th Cir. 2001). When considered here, 29 C.F.R. § 778.224 explains that "a variety of miscellaneous payments" may fall under Section 207(e)(2) where those payments are "similar" in character to the payments described above. 29 C.F.R. § 778.224 also states that Section 207(e)(2) does not exclude payments "such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services." Furthermore, 29 C.F.R. § 778.200(c) stresses that Section 207(e)'s list of exclusions is exhaustive: "all remuneration for employment paid to employees which does not fall within one of these seven exclusionary clauses must be added into the total compensation."

Jamison argues that the City failed to factor in all required remuneration in determining the paramedics' FLSA regular rate. The City responds that it properly excluded certain payments from the regular rate. Subcategories of these payments are discussed below.

<u>Fitness, Specialty and Duty Availability Pay</u>

Pursuant to the CBA, the City paid its paramedics fixed, lump sum payments, including Fitness Pay ("FP"), Specialty Pay ("SP"), and Duty Availability Pay ("DAP"). The City paid FP as an annual lump sum of $350 if the paramedic participated in a voluntary, off-hours fitness test anytime during the year and passed the minimum standard. (Def. SOF ¶¶ 25-30.) The City paid SP to paramedics in quarterly disbursements for maintaining Hazmat or Scuba certifications, effective January 1, 2006. (Def. SOF ¶¶ 22-24.) SP was implemented as a result of bargaining negotiations at the union's suggestion of a payment based on education achievement or certification. (*Id.*) Finally, the City paid paramedics DAP in fixed quarterly sums under the

CBA.  (*Id.* ¶¶ 12-14.)  As with SP, DAP was provided to paramedics as a means to induce agreement by the union to the CBA.

The City argues that FP, SP, and DAP fall under Section 207(e)(2) because they are not compensation for hours worked and were, in part, incentives to ratify the CBA.  The City relies heavily on the Third Circuit opinion, *Minizza v. Stone Container Corp. Corrugated Container Div. East Plant*, 842 F.2d 1456, 1460 (3d Cir. 1988).  In *Minizza*, the Third Circuit held that Section 207(e)(2) excluded the employers' payment of two lump sum payments made to employees based on the duration of their employment and pursuant to their labor contract.  *Id.* at 1462-63.  In so doing, the *Minizza* court stressed the character of the payments was the "key inquiry."  *Id.* at 1460.  Reading Section 207(e)(2)'s "other similar payments" language broadly, the *Minizza* court held that because the parties did not condition the payments on a certain number of hours worked or an amount of services provided, the payments fell within Section 207(e)(2).  *Id.* at 1462.

In *Reich v. Interstate Brands Corp.*, 57 F.3d 574, 577-78 (7th Cir. 1995), the Seventh Circuit distinguished *Minizza* and specifically rejected the broad reading of Section 207(e)(2)'s "other similar payments" that is proposed by the City.  In *Reich*, the defendant, a bakery, argued that lump sum payments for "earned work credits," made pursuant to a collective bargaining agreement, should be excluded under Section 207(e)(2) from the employees' regular rate because the payments were not for hours worked.  *Id.* at 576.  The Seventh Circuit declared that Section 207(e)(2) cannot be read "in isolation," is "one among many exemptions," and "*cannot possibly exclude every payment that is not measured by the number of hours spent at work*."  *Id.* at 577 (emphasis added).  The court analogized the lump sum payments at issue to premium rates for undesirable shifts and held that they were not excluded under Section 207(e)(2).  *Id.* at 578-79.

In so doing, the Seventh Circuit also examined Section 207(e)(3)(a), which excludes only those bonuses that are entirely discretionary.[4] The court explained that nondiscretionary bonuses must be included in the regular rate, even though they are independent of the number of hours worked. *Id.*

Likewise, in *Featsent v. City of Youngstown*, 70 F.3d 900, 904 (6th Cir. 1995), the Sixth Circuit, citing *Reich*, stated that Section 207(e)(2) "does not exclude every payment not measured by hours of employment from the regular rate." The *Featsent* court further explained that Section 207(e)(2)'s "similar payments" clause "was not intended to exclude bonuses from inclusion in the regular rate when those bonuses are understood to be compensation for services even when they are 'not directly attributable to any particular hours of work.'" *Id.* (citing 29 C.F.R. § 778.224(a)). Accordingly, the Sixth Circuit held that payments for shift differentials, hazardous duty pay, bonuses for education degrees, and longevity pay did not fall within Section 207(e)(2) and must be included in the regular rate upon which overtime is calculated. *Featsent*, 70 F.3d at 906.[5]

Other courts have also held that payments that compensate for service, even when not attributable to particular hours worked, must be included in the regular rate in calculating overtime pay. For example, in *Wheeler v. Hampton Twp.*, 399 F.3d 238, 247 (3d Cir. 2005), a

---

[4] In relevant part, Section 207(e)(3)(a) permits the exclusion of bonuses only when "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly[.]"

[5] The *Featsent* court also held that awards for the nonuse of sick leave and bonuses for the absence of medical claims could be excluded under Section 207(e)(2) because they were unrelated to the police officers' compensation for services and hours of service. *Featsent*, 70 F.3d at 905.

case decided after *Minizza*, the Third Circuit held that incentive payments for longevity, education, and senior officers must be added into the basic annual salary in calculating overtime. *See also O'Brien*, 350 F.3d at 294-97 (longevity and career incentive pay); *Theisen v. City of Maple Grove*, 41 F. Supp. 2d 932, 938-39 (D. Minn. 1999) (longevity and canine handler rate); *see also Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 329 (N.D. Ill. 2000) (Defendant, the City of Chicago, conceded that "duty availability allowance" did not fall into statutory exclusions and should have been calculated into the FLSA regular rate.).

Here, the payments at issue, FP, SP, and DAP, do not fall within Section 207(e)(2)'s "other similar payments" clause. Unlike *Minizza*, 842 F.2d at 1462, the payments here do not share "the essential characteristic" of the other types of compensation for non-work identified in Section 207(e)(2), such as holiday pay or traveling expenses. Instead, FP, SP, and DAP can be viewed as compensation for services provided to the City by the paramedics. The fact that the payments are not tied to specific hours does not mean that they fall within the statutory exclusions. *See Reich*, 57 F.3d at 578-79. Indeed, these payments are akin to nondiscretionary bonuses; under the CBA, the City has no discretion whether to pay them if the paramedics fulfill the conditions required for the payment. Nondiscretionary bonuses must be included in the regular rate for purposes of overtime. *See id.*; *see also Featsent*, 70 F.3d at 904; 29 C.F.R. §§ 778.208-211 (DOL interpretative guideline stating that nondiscretionary bonuses must be included in the regular rate for purposes of the FLSA, while discretionary bonuses are excluded).

Likewise, the City's argument that these payments were made as inducements to ratify the CBA, does not, by itself, mean that these payments are excluded from regular rate. Parties cannot contract around the requirements of the FLSA. *See Howard*, 274 F.3d at 1144 ("congressionally granted FLSA rights take precedence over conflicting provisions in a

11

collectively bargained compensation arrangement") (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740-41 (1981)); *see also Reich*, 57 F.3d at 578 ("There is no collective-bargaining exemption from the FLSA."); *Wheeler*, 399 F.3d at 247-248 ("The nonwaivable nature of the provisions of the FLSA is well-settled, even if obtained by negotiations for a collective bargaining agreement.") (citations omitted).

The City has not met its burden in establishing that these payments fall under Section 207(e)(2). Consequently, Fitness Pay, Specialty Pay and Duty Availability Pay should have been included in Jamison's regular rate for purposes of calculating overtime, and summary judgment is granted in favor of Jamison on this issue.

<u>Driving Pay and Acting Pay</u>

Jamison also argues that the City failed to include Driving Pay and Acting Pay when calculating his and other paramedics' regular rates for FLSA overtime. Driving Pay and Acting Pay are specific, supplemental hourly payments, for the additional duties of driving an ambulance and working in a higher rank, respectively. (SOF ¶¶ 19-22.) The City has not responded to Jamison's argument regarding these payments and therefore has waived this issue. Such temporary raises in pay must be factored into the FLSA pay calculations for the week in which they were earned. 29 C.F.R. § 778.109. Summary judgment is granted in favor of Jamison with respect to Acting Pay and Driving Pay.

<u>Uniform Pay</u>

Until March 1, 2007, paramedics received an annual lump sum of $1,250.00 as a uniform allowance ("UP").[6] (Def. SOF ¶¶ 17-21; *see also* Def.'s Resp. to Pl. SOF ¶ 29.) Paramedics are

---

[6] In its Response to Plaintiff's SOF, the City denies that all paramedics received UP and that only "platoon paramedics" received this payment. (Def.'s Resp. to Pl. SOF ¶ 29.)

required to wear dress uniforms, work clothes and protective clothing while on duty and are required to care for those uniforms. (Def. SOF ¶¶ 17-19.) The CBA states that UP disbursements are intended as payments for "cleaning and maintenance of dress uniforms, work clothes and protective clothing." (*Id.* ¶ 17; *see also* Pl.'s Resp. to Def. SOF ¶¶ 17-21.) In accordance with the CBA, these payments ceased in March 2007. (Def.'s Resp. to Pl. SOF ¶ 29.)

29 U.S.C. § 207(e)(2) excludes from the regular rate "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer." In its interpretative regulations, the DOL has specifically identified uniform reimbursement pay as an example of an expense that is excluded under Section 207(e):

> (b) Illustrations. Payment by way of reimbursement for the following types of expenses will not be regarded as part of the employee's regular rate: . . .
>
> (2) the actual or reasonably approximate amount expended by an employee in purchasing, laundering or repairing uniforms or special clothing which his employer requires him to wear.

29 C.F.R. § 778.217(b)(2); *see also Wheeler*, 399 F.3d 238 at 248 n13 (identifying the applicable C.F.R. section for the district court's guidance in determining, on remand, whether uniform pay was part of the annual salary at issue). The DOL further notes, however, that if the amount "paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." 29 C.F.R. § 778.217(c).

The City argues that the UP was intended to reimburse employees for the reasonably foreseeable cost of cleaning and maintaining their uniforms. Jamison admits that he and other paramedics "received allowances per Section 16.9 of the CBA for the purpose of cleaning and maintenance of their dress uniforms, work clothes, and protective clothing." (*See* Pl.'s Resp. to

Def. SOF ¶ 20.)  However, Jamison argues that the UP was not a reasonable reimbursement for uniforms and was just a way to give additional remuneration because:  the City deducted tax and benefit deductions from the UP; the UP is not necessary because the City is required to provide and replace uniforms at the City's expense; and the UP ceased as of March 2007, in accordance with the CBA.  Jamison calculates that the City owes him $164.26 and an equal amount in liquated damages for its failure to include UP in his regular rate.  (*See* Pl.'s Reply/Resp. Br. at p6n7.)[7]

Clearly, Section 207(e) permits the exclusion of reimbursement for cleaning and maintaining uniforms; therefore, pursuant to the statute, the City was entitled to exclude some amount of reimbursement for uniform maintenance.  The inquiry then turns to whether there is a factual dispute about whether the UP reflected "an actual or reasonably approximate amount expended" by Jamison.  There is no factual dispute that the UP was intended for uniform maintenance:  the CBA expressly states that the UP was for uniform cleaning and maintenance, and Jamison has admitted that he received the UP for purposes of uniform maintenance.  However, the City has not submitted any evidence, beyond the CBA, showing that the *amount* of $1,250.00 reflects an actual or reasonably approximate amount for that maintenance.  A factual dispute, therefore, exists regarding this issue.  Consequently, summary judgment is denied to both parties on the issue of UP.[8]

---

[7] The City notes that if UP is included in the regular rate, the City would be entitled to a set-off for any CBA premiums paid or overpayments made under the FLSA against such a *de minimis* amount.

[8] The City also argues that because the UP was administered as a lump sum payment, without regards to the hours worked by Jamison, it should be excluded. This argument fails for the same reasons that it fails with respect to the other payments, as discussed above.

*The Calculation of Overtime Payments Using the Fluctuating Workweek Method*

The next issue raised by the parties is whether the City properly calculated the

paramedics' overtime compensation using the fluctuating workweek ("FWW") method.

The FWW method provides that an employee may receive a fixed salary, even though his

hours fluctuate from week to week, "pursuant to an understanding with his employer that he will

receive such fixed amount as straight time pay for whatever hours he is called upon to work in a

workweek, whether few or many."  29 C.F.R. § 114(a); *see also Condo v. Sysco Corp.*, 1 F.3d

599, 601 (7th Cir. 1993).  Under the FWW, an employee is paid at least half (50 percent) of his

base rate for his overtime hours, compared to an employee working a variable workweek who is

paid time and a half (150 percent) for overtime hours.[9]  *See Heder v. City of Two Rivers,*

*Wisconsin*, 295 F.3d 777, 779 (7th Cir. 2002).  The FWW is one method of complying with

FLSA's overtime requirements, not an exemption to it.  *Samson v. Apollo Resources, Inc.*, 242

F.3d 629, 636 (5th Cir. 2001).  To utilize the FWW, the following conditions must be satisfied:

> (1) the employee's hours must fluctuate from week to week; (2) the employee
> must receive a fixed salary that remains the same regardless of the number of
> hours worked per week; (3) the fixed salary must be sufficient to provide
> compensation at a regular rate not less than the legal minimum wage; (4) the
> employee must receive at least 50 percent of his regular hourly pay for all
> overtime hours worked; and (5) the employer and the employee must have a clear
> mutual understanding that the employee will be paid under the fluctuating
> workweek method.

*Naylor v. DAI Environmental, Inc.*, No. 01-cv-4253, 2004 WL 42347, at *2 (N.D. Ill. Jan. 6,

2004) (citing *Condo*, 1 F.3d at 601-02, and *Heder*, 295 F.3d at 779).  The parties dispute factors

(2) and (5).  An employee bears the burden of proving that an employer failed to administer the

FWW method correctly.  *Samson*, 242 F.3d at 636.

_____

[9] A "variable workweek" is a "schedule that may call for more or less time at work" and
requires that overtime be paid at a rate of at least 150 percent.  *Heder*, 295 F.3d at 779.

Under the FWW method, the employee's regular rate is calculated by dividing his weekly

pay by the total number of hours the employee worked during that week. *Condo*, 1 F.3d at 601-

02 (citing 29 C.F.R. § 778.114). The DOL interpretative regulations explain that paying

overtime at 50 percent of the regular rate under the FWW "satisfies the overtime pay

requirement because such hours have already been compensated at the straight time regular rate,

under the salary arrangement." 29 C.F.R. § 778.114(a). "In other words, the fixed sum

represents the employee's entire straight-time pay for the week, no matter how many hours the

employee worked; the employer need only pay the 50% overtime premium required by the FLSA

for hours after 40." *O'Brien*, 350 F.3d at 288.

<u>The Requirement that the Employee Must Receive a Fixed Salary</u>

In this case, Jamison claims that the FWW method is inappropriate "because the salary

does not pay for all of the hours worked and Paramedic weekly compensation is not fixed."

(Pl.'s Mem. in Supp. of Mot. at 14.) Jamison argues that paramedics do not receive a fixed sum

for hours worked each week because paramedics can receive shift-differential payments in the

form of Acting Pay and/or Driving Pay and also because paramedics can receive varying

amounts for overtime.

In *Heder*, the Seventh Circuit explained that the "paradigm of an employee working a

'fluctuating workweek' is one who receives a fixed salary no matter how many hours the work

requires that week" and that the FWW method applies to employees whose hours vary above and

below 40 hours a week. 295 F.3d at 779.[10] The court reasoned that the increased straight-time pay makes up for the lessened overtime pay: "[t]he possibility of a higher hourly rate in one week justifies the reduction in overtime compensation if, in future weeks, hours rise above 40." *Id.* In *Heder*, the FWW method was not available to the employer because the firefighter plaintiffs were never scheduled to work fewer than 216 hours in a 27-day period, and any firefighter who did not put in 216 hours was docked pay. *Id.* at 780. The Seventh Circuit noted there was "no shortfall of time (correspondingly higher hourly rate) in one pay period that might make up for longer work in another or in another pay period. Every hour is accountable." *Id.*

Furthermore, in *O'Brien*, 350 F.3d at 289, the First Circuit held that the police officer plaintiffs did not receive a fixed sum because they received shift-differential payments. In that case, when officers were required to work a nighttime shift, they received additional compensations in the form of a $10 shift-differential payment added to their checks for the week. *Id.* at 288. The *O'Brien* court stated that "while the shift differential itself may be small, it requires the larger conclusion that most officers do not receive a 'fixed amount' for their straight-time labor each week." *Id.* at 289.

The *O'Brien* court further held that the officers did not receive a fixed sum because their weekly compensation varied depending on the number of hours worked. *Id.* Under the CBAs, the officers received extra pay for every hour worked beyond eight hours in a day and also extra

---

[10] The City urges that *Heder* be ignored and cites to a Western District of Tennessee case, *Newsom v. NPC Int'l., Inc.*, No. 03-2068, 2003 WL 23849758, at *3-4 (W.D. Tenn. Sept. 29, 2003), which questioned *Heder* on whether an employee's hours must actually vary both above and below 40 hours and concluded that *Heder*'s interpretation "goes against the great weight of authority." The City's proposition is unpersuasive; in this jurisdiction, Seventh Circuit authority is controlling.

pay for every hour worked on otherwise off-duty time. *Id.* Citing the Seventh Circuit's decision in *Heder*, the First Circuit stated that:

> [T]he officers in this case do not receive a "fixed amount as straight time pay for whatever hours [they are] called upon to work in a workweek, whether few or many." On the contrary, the officers receive more or less straight-time pay depending on how many contractual overtime hours they work each week. The CBAs require the Town to track each officer's hours for each day during the workweek and compensate him accordingly. This belies the Town's claim that it uses the fluctuating workweek method. The Seventh Circuit recently considered a similar arrangement and held that it did not comport with § 778.114: "Every extra hour is calculated and paid for. That is incompatible with treating the base wage as covering any number of hours at straight time." *Heder v. City of Two Rivers*, 295 F.3d 777, 780 (7th Cir. 2002). We agree.

*O'Brien*, 350 F.3d at 289.

In this case, paramedics do not receive a fixed sum as required for the FWW method. Rather, paramedics can receive varying sums every pay period depending on how many hours they worked per week and on whether they qualified for Acting Pay or Driving Pay. If they work a 24-hour week, they receive straight-time pay. If they work a 48-hour week, they receive straight-time pay plus half time (50 percent) pay for the extra eight hours. If they work outside of their regularly scheduled shift, regardless of whether it was a 24-hour or a 48-hour week, they receive overtime pay at a rate of one and a half time (150 percent). (Def. SOF ¶ 8; SOF ¶ 37.) Following *Heder*'s reasoning, "[e]very hour is accountable" and "[e]very extra hour is calculated and paid for. That is incompatible with treating the base wage as covering any number of hours at straight time." *Heder*, 295 F.3d at 780. Furthermore, as in *O'Brien*, 350 F.3d at 289, paramedics can earn shift-differential payments in the form of Acting Pay or Driving Pay or both, during a pay period. Consequently, based on the "fixed salary" factor, the FWW method is not appropriate for calculating the paramedics' overtime.

Jamison further argues that there was no clear mutual understanding that he would be paid according to the FWW method. The *Heder* court found that there was no "clear mutual understanding" in the collective bargaining agreement because that agreement provided that overtime was to be paid at a rate of time and a half (150 percent) or more. *Heder*, 295 F.3d at 780. The court stressed that "[e]very extra hour is calculated and paid for. That is incompatible with treating the base wage as covering any number of hours at straight time." *Id.* The court also contrasted the agreement at issue with the one in *Condo*, 1 F.3d 599, in which the Seventh Circuit held that an agreement fixing overtime at 50 percent of straight time demonstrated the requisite mutual understanding. *Heder*, 295 F.3d at 780; *see also O'Brien*, 350 F.3d at 290 (holding that there was no "clear mutual understanding" because the town defendant's method of calculating overtime was inconsistent with 29 C.F.R. § 778.114).

In this case, the record evidence shows that there was no clear mutual understanding that the paramedics would be paid according to the FWW method. The CBA provides that overtime is to be calculated at a rate of one and half (150 percent) the regular rate. (*See* Def. SOF Ex. 4 at § 5.3 and Ex. 5 at § 5.3.) In its Response to Jamison's Local Rule 56.1(a)(3) Statement, the City has submitted a document, Exhibit 7, that explains that it pays paramedics "FLSA premium pay" at a rate of half (50 percent) of their regular rate for all hours worked between forty and forty-eight, and a rate of one and a half (150 percent) for all hours worked over forty-eight in a week. (*See* Def.'s Resp. to Pl's SOF, Ex. 7; *see also* SOF ¶ 37.) As in *Heder*, 295 F.3d at 780, this payment arrangement does not comport with an understanding that the City is paying its paramedics under the FWW method. Rather, as its own documents demonstrate, the City pays its paramedics one rate for overtime and another rate for hours worked over forty.

19

The City argues that the parties were aware of how the FLSA overtime was being calculated "for over 10 years prior to this case being filed" and that the City officials "personally met with the union's selected representative and carefully explained how the City was going to calculate the paramedics' FLSA pay." (Def.'s Reply Br. at 8, 8n6.)[11]  However, simply because the paramedics knew about, or even understood, the arrangement by which they were being paid does not equate with a clear mutual understanding that they were being paid *according to the FWW method*.  The City implicitly admits that the CBA does not mention the FWW method when it argues that the CBA "specifically provided for the City to use the FWW method . . . *even if such a moniker was not expressly stated*."  (*Id.*) (emphasis added).

As *Heder* teaches, the arrangement provided for in the CBA is inconsistent with the FWW method.  *See Heder*, 295 F.3d at 780; *see also O'Brien*, 350 F.3d at 290.  Instead, the paramedics' overtime should have been calculated according to the variable workweek method "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

The parties also dispute how that regular rate should be calculated.  Jamison argues that the rate should be calculated by dividing the annual salary by the 2,182 hours that paramedics are scheduled to work.  The City argues its current FWW method, which divides the annual salary

_____

[11] Specifically, the City states that it reviewed with a union representative the document entitled "Explanation of CFD's Formula for Calculating FLSA Overtime Pay for EMS Platoon Employees" and takes issue with Jamison's argument that this document was not disclosed to the paramedics.  (*See* Def.'s Reply Br. p8 and 8n6.)  Although the City provides no support for this assertion by failing to identify a particular exhibit when discussing this document in its brief (*see* Def.'s Reply Br. at 8n6), it appears that the City is referring to Exhibit 7 (found at Def.'s Resp. to Pl's SOF), which has the same exact title.  As discussed above, Exhibit 7 does not demonstrate a clear mutual understanding of the FWW method; instead, Exhibit 7 demonstrates that the paramedics were paid two different rates for different types of overtime:  150 percent for overtime outside of regular shifts and 50 percent for FLSA time (for those hours worked between 40 and 48 on a regular shift).

by 52 weeks and then divides that number by the actual number of hours worked each week, is correct.

The "clear mutual understanding" condition was not satisfied, and for this reason also, the FWW method is inappropriate in this case. In *O'Brien v. Town of Agawam*, 440 F. Supp. 2d 3, 11-12 (D. Mass. 2006) ("*O'Brien II*"), the district court, confronting a similar situation, held that the proper method is to divide the annual salary by the total number of hours that the salary is intended to compensate. The court noted that this "resulting hourly rate accurately reflects 'what actually happens under the governing employment contract,' . . . and does not distort the result in this case." *Id.* (quoting *O'Brien*, 350 F.3d at 294).

The reasoning employed by the district court in *O'Brien II*, 440 F. Supp. 2d at 11-12, is persuasive. In this case, the proper method, which accurately and fairly reflects what is contemplated under the CBA, is to divide the annual salary by the total number of hours that the paramedics are scheduled to work (2,182). Consequently, summary judgment is granted in favor of Jamison on this issue.

*The City's Offset Credits for FLSA Liability*

Next, Jamison argues that the City improperly reduced his FLSA pay by taking improper credits for overtime and continuing education time. Jamison argues that since 2007, the City has not paid paramedics FLSA pay for the eight regularly scheduled hours worked by paramedics if they also worked an extra shift that week. (SOF ¶ 38.) Prior to 2007, the City paid paramedics less than normal FLSA pay if they worked an extra shift that week. (SOF ¶ 39.) The City also paid paramedics a less than normal amount of FLSA pay whenever they attended continuing education classes outside their scheduled shifts. (SOF ¶¶ 54-55.)

Section 207(h) of the FLSA provides that an employer may credit "extra compensation" paid pursuant to Section 207(e)(5)-(7) towards overtime compensation due to employees.

Section 207(e)(5)-(7) specifies the following extra compensation that is creditable:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. § 207(e)(5)-(7). The DOL interpretative guidelines make clear that only the "extra" part of the compensation is credited toward the overtime:

> The extra compensation provided by such premium rates will be excluded in computing the regular rate at which the employees so paid are employed and may be credited toward overtime compensation due under the Act. For example, if an employee is paid $5 an hour under such an agreement for handling general cargo during the basic, normal, or regular workday and $7.50 per hour for like work outside of such workday, *the extra $2.50 will be excluded from the regular rate and may be credited to overtime pay due* under the Act.

29 C.F.R. § 778.206 (emphasis added); *see also* 29 C.F.R. § 778.205. Premium pay credits may only provide offsets to overtime liabilities in the same workweek. *Howard*, 274 F.3d at 1147-49.

In this case, the City took offset credits for overtime and continuing education time; each is addressed separately below.

<u>Overtime Offsets</u>

In this case, the City paid overtime for work outside of the paramedics' regularly-scheduled shifts at the rate of one and a half (150 percent). Thus, under Section 207(h), the City was entitled to a credit for the half-time portion of that pay because the half-time portion represents the "extra" compensation. *See* 29 C.F.R. § 778.206 and 29 U.S.C. § 207(h). Furthermore, the City was only permitted to credit that half-time portion towards the paramedics' FLSA pay only when the paramedics had earned both FLSA pay and overtime in the same workweek. In other words, if a paramedic was regularly scheduled for one 24-hour shift and then also worked an overtime shift during that same week, the City could not credit that overtime toward FLSA pay earned in another week. *Howard*, 274 F.3d at 1147-49.

Consequently, summary judgment is granted in favor of Jamison on the issue that the City was entitled to take only a half-time credit for overtime against the paramedics' FLSA pay when both FLSA and overtime pay were paid in the same workweek.

<u>Continuing Education Offsets</u>

The City pays the paramedics lump sum payments for continuing education. Until some point in 2007, the City treated the compensation it paid its paramedics for continuing education the same way it treated overtime. As such, the City would reduce the FLSA pay when paramedics attended continuing education off-shift against the FLSA pay to be paid in a particular week. (Def. SOF ¶¶ 32-35.) Since September 2007, the City stopped including the hours in the FLSA calculation, but paramedics still receive the lump sum payments established by the CBA. Jamison argues that the City was not entitled to reduce the paramedics' FLSA pay because the continuing education time is not counted as compensable work time under the FLSA.

Paramedics are required by law to maintain their certification by attending continuing education training.  (SOF ¶ 32.)  29 CFR § 553.226(b)(1) provides that the time spent on such training outside of regular working hours is considered to be noncompensable time under the FLSA.  Consequently, the City was not entitled to credit continuing education time against the paramedics' FLSA pay, and summary judgment is appropriate in favor of Jamison on this issue.

*Willful Conduct*

The statute of limitations for FLSA violations is two years, unless there was a "willful violation," in which case the limitations period is three years.  29 U.S.C. § 255(a); *see also Howard*, 274 F.3d at 1144.  The plaintiff bears the burden of establishing willfulness for purposes of the statute of limitations.  *See McDonald v. Vill. of Palatine*, No. 08-cv-5435, 2012 WL 2590492, at *3 (N.D. Ill. June 29, 2012).  The plaintiff must show that "the defendant either knew he was violating the Act or was indifferent to whether he was violating it or not (and therefore 'reckless')."  *E.E.O.C. v. Madison Cmty. Unit Sen. Dist.*, 818 F.2d 577, 585 (7th Cir. 1987); *see also Walton v. United Consumers Club*, 786 F.2d 303, 311 (7th Cir. 1986) (defining "willful" as "knowing and voluntary" for purposes of the FLSA).  "[A]n employer's mere negligence or a good faith – but incorrect – belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation."  *Difilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 425 (S.D.N.Y. 2008).  "Furthermore, an employer has not willfully violated the FLSA if it acts reasonably in determining its legal obligation."  *Pignataro v. Port Authority of New York and New Jersey*, 593 F.3d 265, 273 (3d Cir. 2010) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988)).  Although whether an employer has acted willfully is a question of fact, the plaintiff must present sufficient evidence of willfulness to survive

summary judgment. *Pignataro*, 593 F.3d at 273 (affirming district court's summary judgment finding that employer's violation of the FLSA was not willful).

In this case, Jamison has failed to submit any competent evidence that the City willfully violated the FLSA. In contrast, the City has demonstrated that its policy for paying paramedics was the result of lengthy negotiations with the union regarding the applicable CBA. *See Howard*, 274 F.3d at 1144 (affirming district court's finding that defendant city did not act willfully when it paid its police officers according to a collective bargaining agreement that the union had negotiated). Jamison has failed to carry his burden that the City knew it was violating the FLSA, or acted with reckless indifference to its obligations; there is no genuine issue of material fact on this question. Consequently, summary judgment is granted in favor of the City, and a two-year statute of limitations applies to Jamison's action.

## CONCLUSION

For the reasons stated above, summary judgment is in granted in part in favor of Jamison as follows: (1) the additional payments made by the City to the paramedics pursuant to the CBA, except for Uniform Pay, should have been included in the regular rate for the purposes of overtime; (2) the City is not entitled to use the fluctuating workweek method for purposes of calculating overtime, and instead a variable workweek method applies; (3) the City was entitled to take only a half-time credit for overtime against the paramedics' FLSA pay when both FLSA and overtime pay were paid in the same workweek; and (4) the City was not entitled to credit continuing education time against the paramedics' FLSA pay. Summary judgment is granted in favor of the City on the issue of willful conduct; and therefore, a two-year statute of limitations applies to Jamison's claims. A genuine issue of fact exists regarding whether Uniform Pay was reasonable; and, therefore, summary judgment is denied on that issue.

Pursuant to the Seventh Circuit's suggestion in *Alvarez v. City of Chicago*, 605 F.3d 445, 449n1 (7th Cir. 2010), the Court requests that the parties submit position papers, within thirty days of this Order, as to whether a special master should be appointed to resolve the issue of damages, pursuant to Fed. R. Civ. P. 53(a)(1)(B)(ii).


Date:___August 27, 2013_____        _____
                                         JOHN W. DARRAH
                                         United States District Court Judge